UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN LINDKE, *et al.*,

      Plaintiffs,

                                        Case No. 22-cv-11767

v.                                  Hon. Matthew F. Leitman

MAT KING, *et al.*,

      Defendants.

_____/

## ORDER (1) DENYING WITHOUT PREJUDICE PLAINTIFFS' MOTION TO CERTIFY CLASS AND FOR APPOINTMENT OF CLASS COUNSEL (ECF No. 51); (2) DETERMINING THAT THE NEXT STEP IN THIS ACTION IS AN IN-PERSON STATUS CONFERENCE WITH COUNSEL; AND (3) PROHIBITING ALL ADDITIONAL FILINGS UNTIL FURTHER ORDER OF THE COURT FOLLOWING THE PLANNED STATUS CONFERENCE

Plaintiffs Kevin Lindke and Michael Schultz were each found guilty of criminal contempt of court and sentenced to serve time in custody in the St. Clair County Jail. Lindke and Schultz insist that under Michigan law, they were entitled to receive "good time" credit – credit that reduces a jailed inmate's sentence based on his behavior in custody – toward their sentences. But they claim that they were wrongfully deprived of that credit because the St. Clair County Sheriff – who operated the St. Clair County Jail – had an official policy of withholding "good time" credit from jail inmates who had been convicted of criminal contempt of court (the "No Good Time Policy"). They allege that the withholding of "good time" credit

1

caused them to be held in custody beyond the time that their sentences expired under Michigan law.

Lindke and Schultz originally brought a variety of constitutional claims against several individual Defendants in both their personal and official capacities and against St. Clair County arising out of the alleged over-detention. The Court previously dismissed the claims against the individual Defendants in their personal capacities.

Now before the Court is Plaintiffs' motion to certify a class and appoint class counsel. (*See* Mot., ECF No. 51.)  The Court heard oral argument on the motion on September 23, 2024.  For the reasons explained below, the motion is **DENIED WITHOUT PREJUDICE**.

## I

## A

As described in greater detail below, all of the claims in this action start from the same premise: that an inmate serving a sentence for contempt of court is entitled to "good time" credit under Michigan's statutory scheme governing the manner in which county sheriffs operate their jails. (*See* Am. Compl., ECF No. 13.)  As relevant here, that scheme consists of three statutes.

The first statute authorizes a county sheriff, subject to approval of the county's judges, to adopt rules and regulations governing the operation of the jails that he oversees:

> The sheriff of any county may prescribe rules and regulations for the conduct of prisoners in his custody, which rules and regulations shall be submitted to the circuit judge or judges in said county or circuit for approval, and upon the endorsement of such judge or judges the said rules and regulations shall be deemed to be effective as far as this act is concerned: Provided, That in counties located in any judicial circuit having more than 1 circuit judge, where 1 of said judges shall be designated as presiding judge, the approval and endorsement of said rules and regulations by said presiding judge shall be sufficient to place said rules and regulations in force and effect.

Mich. Comp. Laws § 51.281.

The second statute establishes the criteria for determining whether a county inmate is entitled to "good time" credit and the procedures for taking away an inmate's "good time" credit in the event that the inmate has violated the rules adopted by the sheriff:

> (1) The sheriff shall cause to be kept a record of each and all infractions of the rules and regulations by prisoners, with the names of the persons so offending and the date and character of each offense, and shall examine such records as often as may be necessary to carry out the purpose and intent of this act.
>
> (2) Every prisoner whose record shows that there are no violations of the rules and regulations shall be entitled to a reduction from his or her sentence as follows: 1 day for

> each 6 days of the sentence. The sheriff may, by general rule, subject to amendment from time to time, prescribe how much of the good time earned under this subsection a prisoner shall forfeit for any infraction of the general rules and regulations, and for any act of insubordination the sheriff may by special order take away any portion of or the whole of the good time made by any prisoner up to the date of such offense. The sheriff may as a reward for especially good conduct, in case of insubordination, restore to any prisoner the whole or any portion of the good time lost because of any minor infraction of the rules.

Mich. Comp. Laws § 51.282 (the "Good Time Statute").

The third statute requires a sheriff to post in the jail the rules governing "good time" credit and directs a county jail inmate to bring to the sheriff's attention the fact that the inmate is entitled to early release based upon his receipt of "good time" credit:

> A copy of the rules and regulations, and good behavior allowances for obedience thereto and compliance therewith shall be posted in such place or places in the county jail as will enable all persons imprisoned therein to become acquainted therewith, and it shall be the duty of each prisoner entitled to release with the credit for good behavior allowance to call to the attention of the sheriff or any of his deputies the fact that he is entitled to release, and no sheriff shall be liable to respond to any prisoner or former prisoner in damages in any form of action, particularly false imprisonment, if any excess time up to the maximum of the original sentence without good behavior allowance be served.

Mich. Comp. Laws § 51.283 (the "Posting and Inmate Notification Statute").

**B**

The Court now turns to the putative class representatives: Lindke and Schultz. Lindke alleges that on four separate occasions in 2019 and 2021, he was sentenced to serve time in the St. Clair County Jail for criminal contempt of court. (*See* Am. Compl. at ¶ 22, ECF No. 13, PageID.1266; Mot. Class Cert., ECF No. 51, PageID.2516.)  Lindke claims that he was entitled to "good time" credit on his "various sentences," and he contends that that credit was unlawfully withheld from him under the No Good Time Policy. (Am. Compl. at ¶¶ 17, 23, PageID.1265-1266.) According to Lindke, Under the No Good Time Policy, the St. Clair County Sheriff did not award "good time" credit to defendants like Lindke who had been convicted of criminal contempt. (*See id.* at ¶¶ 17–23.)  Lindke claims that the No Good Time Policy violated Michigan law which, he contends, requires that all jail inmates, including those convicted of criminal contempt, be given "good time" credit if they qualify for that credit. (*See id.* at ¶¶ 12–16, PageID.1264-1265.)  Lindke further alleges that as a result of the unlawful No Good Time Policy being applied to him, his time in custody was "unlawfully extended … in excess of what his actual confinement should have been under Michigan law." (*Id.* at ¶ 24, PageID.1266.)

Lindke's criminal contempt sentences were not the only judgments and/or orders causing him to be held in custody in 2021 and 2022.  In addition to the contempt sentences, he was subject to custodial sentences for a number of other

criminal convictions and as a result of orders denying or revoking bond in those cases. (*See, e.g.*, Reg. of Actions, ECF No. 45-17, PageID.2136; Hr'g Tr. Dec. 16, 2021, ECF No. 45-21, PageID.2175-2176.)  And in still other criminal cases, Lindke did not post bond that had been set by a judicial officer, and thus he was subject to detention in those cases as well. (*See* Docket Sheets, ECF Nos. 45-16, 45-18.) Simply put, Lindke's contempt sentences overlapped substantially with other judgments and orders that independently caused him to be held in custody for much, if not all, of the time periods covered by the contempt sentences. (*See, e.g.*, Op. and Order of Judge John D. Tomlinson, St. Clair County Cir. Ct. Dec. 14, 2021, ECF No. 45-15.)

Schultz, on the other hand, was subject to a single contempt sentence.  On August 11, 2021, a St. Clair County Circuit Judge imposed that sentence upon him as the result of "an in-court dust-up during a guardianship proceeding." (Am. Compl. at ¶ 25, ECF No. 13, PageID.1266.)  The judge sentenced Schultz to serve 25 days in the St. Clair County Jail. (*See id.* at ¶ 26–27.)  Like Lindke, Schultz claims that the unlawful No Good Time Policy was applied to him and that he "was intentionally not provided" with the "good time" credit to which he was entitled under the Good Time Statute. (*Id.* at ¶ 26.)  He contends that, as a result, his sentence was "unlawfully extended … in excess of what his actual confinement should have been under Michigan law." (*Id.* at ¶ 27.)

6

Finally, the terms of Lindke's and Schultz's contempt sentences share one significant feature: the judgments imposing those sentences all expressly stated "[n]o good time." (*See* Schultz Judgment 08/11/2021, ECF No. 50-4; Lindke Judgment 07/26/2019, ECF No. 50-16; Lindke Judgment 03/03/2021, ECF No. 50-18; Lindke Judgment 06/22/2021, ECF No. 50-19; Lindke Judgment 07/29/2021, ECF No. 50-20.[1])  Even though the judgments prohibited the awarding of good time credit, Lindke and Schultz contend that such credit was withheld from them pursuant to the No Good Time Policy, not pursuant to the terms of their judgments. (*See* Am. Compl. at ¶ 20, ECF No. 13, PageID.1265.)

## C

Lindke, as the sole plaintiff, filed this action on August 1, 2022. (*See* Compl., ECF No. 1.)  He named as defendants Timothy Donnellon, the former sheriff of St. Clair County, and Mat King, the current sheriff of St. Clair County. (*See id.* at ¶¶ 5-6, PageID.2.)  He sued Donnellon and King in both their official and personal capacities. (*See id.*)

On October 6, 2022, Lindke filed an Amended Complaint in which Schultz was added as a plaintiff.  (*See* Am. Compl., ECF No. 13.)  The Amended Complaint also added as defendants St. Clair County; Tracy Decaussin, jail administrator for

---

[1] These four judgments are the relevant contempt judgments in this action because they are the only judgments referenced in the Amended Complaint (ECF No. 13) and motion for class certification (ECF No. 51).

St. Clair County; and Thomas Bliss, former jail administrator for St. Clair County. (*See id.* at ¶¶ 5-9, PageID.1264.)  The Plaintiffs sued Decaussin and Bliss in both their official and personal capacities. (*See id.*)

All of the claims in the Amended Complaint rest upon Lindke's and Schultz's allegation that St. Clair County had, and the individual Defendants implemented, the No Good Time Policy.  Lindke and Schultz contend that as a result of the wrongful deprivation of good time credit, they were held in custody beyond the time at which their sentences should have expired under Michigan law.  Lindke and Schultz assert ten claims that reflect five theories of liability; each theory of liability is asserted as a violation of both the federal Constitution and the parallel provision of the Michigan Constitution of 1963.  The ten claims are as follows:

- **Counts I and II**: "Failure of Timely Release" in violation of the Due Process Clause of the Fourteenth Amendment and Article I, Section 17 of the Michigan Constitution of 1963;

- **Counts III and IV**: Violation of the right to Substantive Due Process under the Fourteenth Amendment and Article I, Section 17 of the Michigan Constitution of 1963;

- **Count V and VI**: Violation of the right to Procedural Due Process under the Fourteenth Amendment and under Article I, Section 17 of the Michigan Constitution of 1963;

- **Count VII and VIII**: Violation of the Equal Protection Clause of the Fourteenth Amendment and of Article I, Section 2 of the Michigan Constitution of 1963;

- **Count IX and X**: Violation of the prohibition on unreasonable seizures under the Fourth Amendment and under Article I, Section 11 of the Michigan Constitution of 1963.

**D**

On January 18, 2024, the Defendants filed a motion for summary judgment in which they argued that Lindke's and Schultz's claims failed as a matter of law for several reasons. (*See* Mot. for Summ. J., ECF No. 45.)  Many of the Defendants' arguments and the Court's rulings on those arguments are relevant to several matters raised in the class certification motion now before the Court, so the Court will briefly review the relevant portions of the summary judgment proceedings.

The Defendants first asserted that all of the claims failed on the ground that the Good Time Statute does not apply to criminal contempt sentences. (*See id.*, PageID.2040-2050.)  They then made the additional argument that it would violate the separation of powers principles embedded in the Michigan Constitution to apply the Good Time Statute to such sentences. (*See id.*).  The Court disagreed with both of those arguments.  The Court held that the Good Time Statute does apply to criminal contempt sentences and that such an application of the statute does not

violate the Michigan constitution's separation of powers principles. (*See* 05/17/2024 Mot. Hr'g Tr., ECF No. 63, PageID.2766.)

The Defendants alternatively argued that Plaintiffs' claims failed because Plaintiffs did not comply with the provision of the Posting and Inmate Notification Statute that directed them "to call to the attention of the sheriff or any of his deputies the fact that [they were] entitled to release" on the ground that their "good time" credit had reduced their original sentence. (Mot. for Summ. J., ECF No. 45, PageID.2056.)  In essence, the Defendants said that Plaintiffs had no right to be released based upon their claimed entitled to "good time" credit because they did not notify the sheriff that they were entitled to release.  The Court rejected this argument on the basis that, among other things, a jury could reasonably find that any such notification and request for release would have been futile in light of the No Good Time Policy.  The Court noted that Michigan law does not require a plaintiff to perform a futile act.

The Defendants next contended that Lindke's claim failed as a matter of law because he had "several adjudicated rule violations" during his incarceration and thus was not entitled to "good time" credit under the Good Time Statute. (*See id.*, PageID.2057.)  Under the Defendants' reading of the Good Time Statute, if an inmate is found guilty of a rules infraction at any time during his incarceration, then

he has no claim to any "good time" and must serve his full sentence.  The Court disagreed with that interpretation of the Good Time Statute.

Under the Court's reading of the Good Time Statute, an inmate earns one day of "good time" credit each time he completes six days of his sentence without being found guilty of a rules violation, and each day of credit is, for lack of a better term, "vested" when it is earned.  Then, there are only two ways in which an inmate may lose vested "good time" credit.  First, if the sheriff has promulgated a "general rule" that "prescribe[s] how much of the good time [credit] . . . a prisoner shall forfeit" for specific rules violations, then an inmate who is found guilty of such a rules violation will forfeit the identified amount of "good time" credit for that violation. Mich. Comp. Laws § 51.282(2).  Second, if the sheriff has not issued a "general order" specifying the amount of "good time" credit to be deducted for a rules violation, the sheriff "may by special order take away any portion of or the whole of the good time made by any prisoner up to the date of such [violation]." *Id.*  Under the Court's reading of the Good Time Statute, the fact that Lindke had been found guilty of rules violations did not mean that he lost any of his vested "good time" credit because the record showed that the sheriff had neither adopted a general order concerning the loss of "good time" credit nor issued a special order revoking "good time" that Lindke had earned up to the date of his violation.

11

The Defendants further argued that they were entitled to summary judgment against Lindke because at the time that he was being held in custody on his contempt sentences (*i.e.*, the sentences that he says should have been, but were not, shortened based upon his "good time" credit), he was also subject to other orders of confinement, including, but not limited to, "several overlapping sentences." (*See* Mot., ECF No. 45, PageID.2058.)  Therefore, the Defendants argued, even if Lindke had been granted "good time" credit, there was "never a time" that he would have been eligible for release because the other orders of confinement would have required his continued incarceration. (*See id.*)  The Court held that the Defendants were not entitled to summary judgment on that ground.  It concluded that the Defendants had failed to show, as a matter of law, that Lindke's other sentences and other orders of confinement would have precluded his release even if he had been given "good time" credit on his criminal contempt sentences.

Finally, the Defendants argued that all of the individual Defendants were entitled to qualified immunity with respect to the claims brought against them in their personal capacity because it was not clearly established that denying "good time" credit to a criminal defendant who had been convicted of criminal contempt amounted to a constitutional violation.  The Court agreed and granted summary judgment in favor of the individual Defendants in their personal capacities on all of the claims in the Amended Complaint.

In sum, as a result of the Court's summary judgment ruling, the remaining claims in this case are (1) all of the claims in the Amended Complaint brought against St. Clair County and (2) all of the claims in the Amended Complaint brought against the individual Defendants in their official capacities.[2]

## E

Now before the Court is Plaintiffs' motion to certify a class and appoint class counsel. (*See* Mot., ECF No. 51.)  Plaintiffs seek to certify a damages class under Rule 23(b)(3) of the Federal Rules of Civil Procedure.  They propose the following class definition:

> All individuals confined to the St Clair County jail for criminal contempt for a period in excess of what is permitted by Michigan law due the failure to respect "good time" credit pursuant to M.C.L. § 51.282(1) from April 22, 2019 to January 10, 2022.

(*Id.*, PageID.2516; internal footnote omitted.)

## II

The Sixth Circuit has offered the following helpful overview of the procedure for class certification under Rule 23 of the Federal Rules of Civil Procedure where, as here, the Plaintiffs seek to proceed under Rule 23(b)(3):

> To obtain class certification, the plaintiffs must show that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact

---

[2] The claims brought against the individual Defendants in their official capacity are treated as claims against St. Clair County.

common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a). These four requirements—numerosity, commonality, typicality, and adequate representation—serve to limit class claims to those that are fairly encompassed within the claims of the named plaintiffs because class representatives must share the same interests and injury as the class members. *Dukes*, 131 S.Ct. at 2550.

In addition to fulfilling the four prerequisites of Rule 23(a), the proposed class must also meet at least one of the three requirements listed in Rule 23(b). *Dukes*, 131 S.Ct. at 2548; *Young*, 693 F.3d at 537. The plaintiffs sought class certification under Rule 23(b)(3), which requires the district court to find "that the questions of law or fact common to class members predominate over any questions affecting only individual members" and that the class action is "superior to other available methods" to adjudicate the controversy fairly and efficiently. The plaintiffs carry the burden to prove that the class certification prerequisites are met, *In re Am. Med. Sys., Inc.*, 75 F.3d at 1079, and the plaintiffs, as class representatives, were required to establish that they possess the same interest and suffered the same injury as the class members they seek to represent. *Dukes*, 131 S.Ct. at 2550.

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850–51 (6th Cir. 2013).  A district court must "conduct a 'rigorous analysis' into whether the prerequisites of Rule 23 are met before certifying a class." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1078–79 (6th Cir. 1996) (quoting *Gen. Tel. Co. v.*

14

*Falcon*, 457 U.S. 147, 161 (1982).  The Court offers its analysis below.  The Court addresses each of the Rule 23(a) requirements in turn.

A

The Court begins with numerosity.  There is no "strict numerical test" for numerosity under Rule 23(a)(1), but "substantial numbers" typically satisfy the numerosity requirement. *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d at 1079 ("When a class size reaches substantial proportions . . . the impracticability requirement is usually satisfied by the numbers alone.")).  While the Sixth Circuit has not set a floor as to what constitutes a "substantial number," that court has determined that a class of 35 was sufficiently numerous as to support certification. *See In re Am. Med. Sys., Inc.*, 75 F.3d at 1076 (citing *Afro Am. Patrolmen's League v. Duck*, 503 F.2d 294 (6th Cir. 1974)).

A plaintiff seeking class certification bears the burden of showing that a proposed class is so numerous that joinder would be impracticable. *See in re Ford Motor Co.*, 86 F.4th 723, 727 (6th Cir. 2023).  "[W]hile 'the exact number of class members need not be pleaded or proved, impracticability of joinder must be positively shown, and cannot be speculative.'" *Golden v. City of Columbus*, 404 F.3d 950, 965–66 (6th Cir. 2005) (quoting *McGee v. East Ohio Gas Co.*, 200 F.R.D. 382, 389 (S.D. Ohio 2001)).  Moreover, in assessing numerosity, "the court may make

15

common sense assumptions without the need for precise quantification of the class."
*Robinson v. Purkey*, 326 F.R.D. 105, 166 (M.D. Tenn. 2018).

Here, Plaintiffs have failed to present sufficient evidence to satisfy Rule 23(a)(1)'s numerosity requirement.  As noted above, Plaintiffs propose to certify a class of "[a]ll individuals confined to the St Clair County jail for criminal contempt for a period in excess of what is permitted by Michigan law due the failure to respect "good time" credit pursuant to M.C.L. § 51.282(1) from April 22, 2019 to January 10, 2022." (Mot., ECF No. 51, PageID.2516; internal footnote omitted.)  Plaintiffs contend that there are "in excess of 200" members of this class. (*Id.*, PageID.2519.)  But the evidence that the Plaintiffs submitted is not sufficient to enable the Court to determine the number of class members.

More specifically, Plaintiffs have failed to show that more than 200 inmates were allegedly over-detained "for a period in excess of what is permitted by Michigan law due the failure to respect 'good time' credit."  While Plaintiffs have submitted a list of 200 inmates who served criminal contempt sentences in the St. Clair County Jail during the identified class period, that list does not tell us whether any of the identified inmates actually served additional days in custody *because* they were denied "good time" credit.  Indeed, as Lindke's own circumstances illustrate, at least some of the inmates serving criminal contempt sentences may have been subject to additional orders and/or sentences that may have independently required

16

their incarceration *beyond* the terms of their contempt sentences, and that group of inmates may not have served any additional time in custody "due to the failure to provide 'good time' credit."[3]   Those inmates would thus not be in Plaintiffs' proposed class.  Simply put, Plaintiffs have failed to show how many of the inmates who served criminal contempt sentences during the relevant time period actually fall within their proposed class.

Moreover, the Court does not believe that it may reasonably assume that the membership in the proposed class is sufficiently numerous as to warrant class certification.  While it is certainly possible that many of the proposed class members were not subject to additional sentences or orders of confinement that may have mooted the impact of the denial of "good time" credit, the Court lacks a reasoned basis on which presume that that is the case.

For all of these reasons, Plaintiffs have failed to show that the proposed class is so numerous as to support certification.[4]

---

[3] Lindke vigorously disputes that he was subject to other sentences and orders of detention that covered his entire time in custody.  The Court does not mean to take a position on that issue one way or the other at this point.  The Court highlights Lindke's circumstances solely to illustrate the realistic possibility that some inmates may have been subject to other sentences and orders that would have required their continued detention even if they had been given "good time" credit.

[4] The Court acknowledges that the Defendants have not argued that numerosity is lacking with respect to the proposed class.  It is nonetheless appropriate for the Court to independently evaluate that element.  Indeed, "[a] court may not certify a class unless it engages in a 'rigorous analysis' showing that the named plaintiff meets *all* of Rule 23's requirements." *Fox v. Saginaw Cnty., Michigan*, 67 F.4th 284, 300 (6th

**B**

The Court next turns to the "commonality" prong of the 23(a) analysis. "Commonality" requires that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  To meet this requirement, "[m]ere questions do not suffice; rather, a class action must be able to 'generate common answers apt to drive the resolution of the litigation.'" *In re Ford Motor Co.*, 86 F.4th 723, 727 (6th Cir. 2023) (quoting *Dukes*, 564 U.S. at 350). A common question is one whose answer would "resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350.  For the purposes of Rule 23(a)(2)'s commonality requirement, "even a single common question will do." *Dukes*, 564 U.S. at 359 (cleaned up).

Plaintiffs have satisfied the commonality requirement by showing that there is a question of law – a very substantial one – that is common to the claims of all proposed class members.  As set forth above, every claim of every class member hinges on Plaintiffs' contention that the Good Time Statute applies to criminal contempt sentences under Michigan law.  Thus, underlying every claim is this common question of law: does the Good Time Statute apply to criminal contempt sentences?  The answer to that question will apply in the same manner to all claims

---

Cir. 2023) (emphasis added) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011)).

asserted by all members of the proposed class.  This common question of law is sufficient to establish commonality under Rule 23(a)(2).

The Defendants counter that commonality is lacking under Rule 23(a)(2) because the Court will have to conduct an "individualized review" of each class member's circumstances in order to determine whether the class member was entitled to "good time" credit. (Resp., ECF No. 53, PageID.2609.)  More specifically, echoing an argument made in their summary judgment motion, the Defendants argue that in order to determine whether a proposed class member was entitled to "good time" credit, the Court would need to determine whether the member (1) had an entirely "clean jail record" (meaning that he received no disciplinary infractions at any time) and (2) "specifically requested of the Sheriff or his/her deputies to be released based upon earned good time credit." (*See id.*)  And the Defendants argue that there can be no commonality because the Court must make these highly individualized determinations.  This line of argument does not defeat commonality under Rule 23(a)(2) for at least two reasons.

First, the common question of law identified by the Court would remain in this action even if the Defendants were correct that the Court would also have to

make the individualized determinations they identify.  And, as explained above, that one common question is enough to satisfy Rule 23(a)(2).[5]

Second (and in any event), the Court's ruling on the Defendants' motion for summary judgment has eliminated from this action the specific "review" that the Defendants say is required for each class member.  As noted above, when the Court denied that motion, the Court ruled that (1) a jail inmate *could* maintain "good time" credit even if his jail disciplinary record was not entirely "clean" and (2) a jail inmate was not required to request release in order to be entitled to early release based upon "good time" credit.  For this additional reason, the Defendants' argument concerning the individualized "review" required for each jail inmate does not defeat commonality under Rule 23(a)(2).

## C

Next, the Court turns to the "typicality" requirement.  Typicality requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  To be typical, the named plaintiffs' interests must be aligned with those of the class such that by pursuing his own claims, the named plaintiff "will also advance the interests of the class members." *In re Am. Med. Sys.*, 75 F.3d at 1082 .  In general, "[a] plaintiff's claim is typical if

---

[5] The Defendants' argument that other individualized questions of law and fact will be the focus of this action is best directed at the predominance inquiry required under Rule 23(b).

it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 618 (6th Cir. 2007) (quoting *In re Am. Med. Sys.*, 75 F.3d at 1082).  However, a plaintiff's claim is not typical if the plaintiff is "subject to unique defenses which threaten to become the focus of the litigation." *Cahoo v. Fast Enterprises, LLC*, 508 F.Supp.3d 138, 158 (E.D. Mich. 2020) (quoting *Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000)); *see also Beck v. Maximus*, 457 F.3d 291, 296–97 (3d Cir. 2006) (collecting cases holding same); *Norfolk Cnty. Ret. Sys. v. Cmty. Health Sys., Inc.*, 332 F.R.D. 556 (M.D. Tenn. 2019) ("Defendants do not have to *prove* a unique defense against the proposed class representatives to defeat certification. It is problem enough that the proposed representatives are subject to such defenses, which renders their claims atypical of other class members.") (cleaned up).  Because there is "a danger that the absent class members will suffer if their representative is preoccupied with defenses unique to it," the presence of such defenses "will destroy typicality." *Cahoo*, 508 F.Supp.3d at 158 (cleaned up).  "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998).

Plaintiffs' claims are not typical of the claims held by the entire proposed class they seek to represent. Typicality is lacking because Plaintiffs are subject to defenses that do not apply to all class members and because these defenses could well become one focus of this action.

Lindke, for instance, is subject to the defense that the No Good Time Policy did not cause him to be detained beyond the terms of his sentence because he was subject to other, overlapping sentences and orders of pre-trial detention that would have required his continued incarceration even if he had been awarded all of the "good time" credit that he claims to have been denied. (*See* Mot. for Summ. J., ECF No. 45, PageID.2058-2061.) Not all members of the proposed class are subject to that defense; the class members who were not subject to any other sentences or orders of detention would not face it. And there is a meaningful risk that this defense, and Lindke's effort to overcome it, could become a primary focus of this case. Indeed, the parties have already submitted substantial briefing on the defense, and that briefing – which is lengthy and challenging to follow – reveals that it is a difficult and time-consuming task to determine whether Lindke's other sentences and orders of pre-trial detention overlapped with the periods during which he says that he would have been released if he had been granted "good time" credit. (*See* Mot. for Summ. J., ECF No. 45, PageID.2058-2061; Resp., ECF No. 50, PageID.2374-2380; Reply, ECF No. 52, PageID.2590.) Because there is a real risk

that Lindke will have to direct a potentially substantial amount of his case toward overcoming the overlapping custody defense that does not apply to all class members, his claims are not typical.

In addition, Lindke and Schultz are both subject to defenses based upon the fact that their judgments of sentence expressly provided that they should receive "[n]o good time." (Schultz Judgment 08/11/2021, ECF No. 50-4; Lindke Judgment 07/26/2019, ECF No. 50-16; Lindke Judgment 03/03/2021, ECF No. 50-18; Lindke Judgment 06/22/2021, ECF No. 50-19; Lindke Judgment 07/29/2021, ECF No. 50-20.)  Those defenses would not apply to all class members because not all of the judgments of sentence entered against the class members contained this "no good time" language. (*See* Examples of Contempt Judgments, ECF No. 45-7.)  The first defense arising from the "no good time" language is a lack-of-causation defense. More specifically, the Defendants will be able to argue that because the express terms of Lindke's and Schultz's criminal sentences required the withholding of "good time" credit, Lindke and Schultz would have been denied "good time" credit – and therefore detained for the same amount of time – even if the No Good Time Policy had not been in effect.  And there is reason to believe that litigating that defense could be a focus of this action.  Indeed, the parties have already hotly contested the effect of the "no good time" language.  The Defendants have contended that this provision of the judgments had the force of law; Lindke and Schultz have

pointed to contrary evidence suggesting that the language may have been merely an attempt by the sentencing judges to highlight for the sheriff that the sentence imposed fell within the No Good Time Policy. (*See* Op. and Order of Judge John D. Tomlinson, St. Clair County Cir. Ct. Dec. 14, 2021, ECF No. 50-6, PageID.2412-2413; 10/04/2021 Email from Tracy DeCaussin, ECF No. 50-7, PageID.2416.)  The Court has not resolved this dispute and thus it remains alive in the case.

The second defense arising from the "no good time" language in Lindke's and Schutlz's judgments is a defense arising under *Heck v. Humphrey*, 512 U.S. 477 (1994).  In *Heck*, the Supreme Court held that a claim for damages under 42 U.S.C. § 1983 is barred where "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence[.]" *Id.* at 486–87.  Here, the Defendants have asserted that *Heck* bars Lindke's and Schultz's claims because the relief they seek – damages on the basis that they were unlawfully deprived of "good time" credit and over-detained as a result – would necessarily imply the invalidity of the "no good time" provision of their sentences.  While the Court previously denied summary judgment in favor of the Defendants on this defense, it remains alive in this action and, like the lack-of-causation defense, presents challenging evidentiary

and legal questions that may well consume a substantial amount of Lindke's and Schultz's attention going forward.[6]

In short, Lindke's and Schultz's claims are not typical because Lindke and Schultz are subject to the above-described defenses that do not apply to all of the members of their proposed class and because there is a real risk that the defenses will play a substantial role in this action going forward. *See, e.g.*, *Cahoo*, 508 F.Supp.3d at 158 (finding lack of typicality where three named plaintiffs had filed for bankruptcy and faced judicial estoppel and other defenses that "already [had] dominated the merits motion practice in [that] case"); *Frompovicz v. Niagara Bottling, LLC*, 420 F.Supp.3d 361, 371 (E.D. Pa. 2019) (finding plaintiff atypical where his own claims were subject to a statute of limitations defense); *Berman v. Freedom Fin. Network*, 400 F.Supp.3d 964, 987 (N.D. Cal. 2019) (finding named plaintiff atypical where he was subject to express consent and mandatory arbitration defenses).

---

[6] The Court issued an oral ruling denying summary judgment on the *Heck* defense. (*See* 05/17/2024 Mot. Hr'g Tr., ECF No. 63, PageID.2766.)  The Court said that it was denying summary judgment on that defense because "granting relief here wouldn't call into question the validity of the underlying conviction[.]" (*See id.*)  On further reflection, it is not clear to the Court that that is correct; it may be that the *Heck* defense does foreclose Lindke's and Schultz's claims here.  For reasons the Court will discuss in more detail with the parties at an upcoming status conference, there are complicated evidentiary and legal questions related to the *Heck* defense that must be resolved before the Court can make a final ruling on that defense.

**D**

The final threshold requirement under Rule 23(a) inquires into the adequacy of the representative parties and their class counsel.  The party seeking certification must show that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  To be adequate, the named plaintiff "must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 (1997) (cleaned up).  The Sixth Circuit looks to two criteria for determining adequacy of representation: (1) "the representative must have common interests with unnamed members of the class;" and (2) "it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 543 (6th Cir. 2012).  The Defendants contend that neither Lindke nor Schultz is an adequate class representative.  The Court agrees that neither Plaintiff is an adequate representative of the class as currently proposed.  The Court concludes that Schultz (but not Lindke) could be an adequate representative of a narrower class.

Lindke and Schultz are not adequate representatives of the class as currently proposed for the same reason that their claims are not typical of the class members' claims – *i.e.*, because they are subject to certain potentially-significant defenses that do not apply to all class members and that appear likely to require a substantial

26

amount of their attention.  Because they are subject to these defenses, their interests do not sufficiently align with all of the members of the proposed class so as to make them adequate representatives of that class. *See Beck v. Maximus*, 457 F.3d 291, 301 (3d Cir. 2006) (explaining that a proposed class representative is not adequate "if the representative is subject to a unique defense that is likely to become a major focus of the litigation.")

The Defendants go further and suggest that Schultz could never be an adequate class representative in this action because he allegedly lied to the Court when he indicated that he had not been the subject of a guardianship and because he suffers from a cognitive disability. (*See* Supp. Br., ECF No. 70, PageID.2846-2847.) The Court does not find Schultz to be categorically inadequate on either basis.  First, while a court may consider a proposed class representative's credibility in assessing his adequacy, *see Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 431 (6th Cir. 2012), the Court does not find Schultz's alleged lack of candor to render him inadequate because his claim (and the claims of the proposed class members he seeks to represent) does not meaningfully depend upon his credibility (or claimed lack thereof).  The key facts underlying the claim – such as the length of his sentence, whether he was denied "good time" credit, and whether that denial resulted from the No Good Time Policy – will be proved through evidence other than Schultz's testimony and/or are not open to serious dispute.  Thus, even if the Defendants

27

successfully impeached Schultz by showing that he falsely denied being the subject of a guardianship, that would not have a discernible impact on his claims or those of the proposed class he seeks to represent.

Second, Schultz's alleged disability, verbal apraxia, is one affecting speech, not cognition. *See Apraxia of Speech in Adults*, Am. Speech-Language-Hearing Ass'n, https://www.asha.org/public/speech/disorders/apraxia-of-speech-in-adults/. While Schultz may need some assistance communicating his thoughts to the jury, that does not preclude him from ever being an adequate class representative. And while Schultz was once under a court-ordered guardianship that may have been based upon some form of cognitive impairment, that guardianship has since been terminated by a court. That termination indicates that Schultz is now able to think clearly and exercise appropriate judgment. For all of these reasons, the Court rejects Defendants' contention that Schultz could never be an adequate class representative in this action. If Plaintiffs defined the class more narrowly, it is possible Schultz could adequately represent that class.

Finally, the Defendants argue that Lindke could never adequately represent any class in this case. The Court agrees with Defendants. That is because in at least one important respect, Lindke's interests diverge from those of the class members he seeks to represent. More specifically, Lindke has a strong personal interest in not appearing in person for in-court proceedings (including trial) because he is the

subject of at least one bench warrant for his arrest, but the class members obviously have a strong competing interest in ensuring that Lindke appears for in-court proceedings and prosecutes the pending claims in person. *See Davis v. City of Philadelphia*, No. 93-0495, 1994 WL 116133, at *3 and n.6 (E.D. Pa. Mar. 23, 1994) (holding that proposed class representative would not adequately represent the interests of the proposed class where, among other things, bench warrants had been issued for his arrest and where those warrants evidenced his "inclination to avoid court proceedings"). Lindke has promised that he will personally appear as directed for proceedings in this action, but the members of the proposed class should not be required to accept Lindke's promise at face value. They are entitled to be represented by a person who is not burdened in any way by an incentive not to appear in court. Thus, even if Plaintiffs defined the class more narrowly, Lindke would still not be an adequate representative given his fugitive status.

## E

For the reasons explained above, Lindke and Schultz have not satisfied all of the certification requirements under Rule 23(a). Certification of their proposed class would therefore not be appropriate. *See Sprague v. Gen. Motors Corp.*, 133 F.3d at 396 ("No class that fails to satisfy all four of the prerequisites of Rule 23(a) may be certified . . . ."); *Garcia v. Johanns*, 444 F.3d 625, 631 (D.C. Cir. 2006) ("Failure to adequately demonstrate any of the four [23(a) factors] is fatal to class certification.").

**III**

Given the Court's conclusion that Lindke and Schultz have not met their obligations under Rule 23(a), "the Court need not" decide whether they have satisfied their burden under Rule 23(b) to show predominance and superiority. *Cleary v. Phillip Morris USA, Inc.*, 265 F.R.D. 289, 293 (N. D. Ill. 2010).[7] But even though it is unnecessary for the Court to rule on the Rule 23(b) factors, the Court sees value in offering some very limited thoughts on those factors because the Court anticipates that a renewed motion for class certification will soon be filed in this action.

The Court's primary observation relates to the Defendants' Rule 23(b) arguments. In those arguments, the Defendants identify as "individualized" issues a number of disputes that have been eliminated from the action by virtue of the Court's summary judgment ruling. For instance, the Defendants contend that individual questions predominate over common ones because, among other things,

---

[7] *See also Stevens v. Ford Motor Company*, No. 2:18-CV-00456, 2022 WL 19978265, at *24 (S.D. Tex. Sept. 29, 2022) (concluding that it was "unnecessary to determine whether [the party seeking class certification met] Rule 23(b)(3)'s predominance and superiority requirements" where the party "failed to carry [its] burden on the Rule 23(a) . . . requirements"); *Brown v. Porter McGuire Kiakona & Chow, LLP*, No. CV 17-00554, 2019 WL 254658, at *11 (D. Haw. Jan. 17, 2019) ("Because the proposed class[] do[es] not meet the Rule 23(a) requirements, it is not necessary to address the Rule 23(b) requirements."); *Trawinski v. KPMG LLP*, No. 11 Civ. 2978, 2012 WL 6758059, at *5 n.2 (S.D.N.Y. Dec. 21, 2012) ("Because the Court concludes that [plaintiff] does not meet all the requirements of Rule 23(a), it is not necessary to also address whether Rule 23(b) is satisfied.").

the Court will have to determine "whether [each] purported class member was entitled to good time because of the purported class member's behavior in the jail, and whether [each] purported class member requested to be released based upon good time." (Resp., ECF No. 53, PageID.2614)  However, as described above, at the summary judgment stage of these proceedings, the Court rejected the Defendants' arguments that (1) an inmate was not entitled to any "good time" credit if he had been adjudicated guilty of a disciplinary infraction at any point while serving his sentence and (2) an inmate was not entitled to be released based upon "good time" credit unless he specifically asked the sheriff to release him.  During the next round of briefing, it would be helpful if the Defendants eliminated from their Rule 23(b) analysis the issues that the Court removed from the case in its summary judgment ruling.[8]

## IV

For all of the reasons explained above, Plaintiffs' motion to certify class and appoint class counsel (ECF No. 51) is **DENIED WITHOUT PREJUDICE**.

While the Court is denying Plaintiffs' current effort to certify a class, the Court is inclined to believe that the action may be appropriate for class certification if certain modifications are made to the proposed class and its structure.  The Court

---

[8] The Court does not fault the Defendants for including the above-described arguments in their opposition to the class certification motion.  The Defendants filed that opposition before the Court ruled on the summary judgment motion.

therefore believes that the most productive path forward is to promptly convene a status conference with counsel to discuss next steps in the certification process. The Court will schedule that conference in the very near future.

In the meantime, no party shall file any additional motions or pleadings until further order of the Court. The Court wants to have a full and frank discussion with counsel about the direction of this action at the upcoming status conference. That discussion will inform and guide the next round of filings.

**IT IS SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  January 17, 2025

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on January 17, 2025, by electronic means and/or ordinary mail.

s/Holly A. Ryan
Case Manager
(313) 234-5126
